[Filed March 27, 1885.]

# S. J. TATUM AND H. L. BOWEN v. C. C. CHERRY AND H. L. PARKES.

MECHANICS' LIENS—CONSTRUCTION OF STATUTE.—Under section 15 of the Act of October 28, 1874, providing for mechanics' liens, where there is no written contract, the right to a lien attaches only in case the person erecting the building refuses to furnish a memorandum in writing of the terms of the contract for its construction.

ID.—The lien law was not designed to give machinists and others a lien for work done and material furnished in the ordinary course of business. The person claiming a lien must be a contractor, must have either built or repaired a structure in some definite particular. An entire transaction must have been contemplated by the parties at the outset.

LINN COUNTY.  Plaintiffs appeal.  Decree modified.

The facts are stated in the opinion.

*Weatherford & Blackburn,* for Appellants.

To entitle one to a lien it must be shown affirmatively that the machinery repaired or altered is of such a nature or character that it becomes a part of the realty. (*Baker* v. *Fessenden,* 71 Me. 292.) Nor is one supplying new machinery for an old mill entitled to a mechanic's lien on the building. (*Haslett* v. *Gillispie,* 95 Pa. St. 371.) When the manufacturer or machinist merely manufactures or sells materials for repairing machinery, or repairs detached parts thereof, but has nothing to do with uniting the materials to the machinery, he obtains no lien. (*Loudon* v. *Coleman,* 59 Ga. 653.) It is only those that contribute directly, by their labor or materials furnished, in the construction of a building or in the repairs of the same, that are entitled to a lien. (*McCormick* v. *Los Angeles W. Co.* 40 Cal. 185.) Taking a promissory note waives any lien the respondents may have had. (*Crooks* v. *Finney,* 39 Ohio St. 57; *Schulenburg* v. *Robison,* 5 Mo. App. 561; *McMaster* v. *Merrick,* 41 Mich. 505.) A mechanic's lien cannot be enforced against lands of which there is no written identification in the agreement for the work. (*Hammond* v. *Wells,* 45 Mich. 11.) A party desiring to enforce a mechanic's lien must show a strict compliance with every

requirement of the statute. (*Farmers' Bank.* v *Winslow,* 3 Minn. 86 ; *Rugg* v. *Hoover,* 28 Minn. 404.)

*Flinn & Chamberlain,* for Respondents Cherry and Parkes.

Sections 1, 2, 3, and 15 of "an act to provide for liens of mechanics, laborers, material men and others" (Laws 1874, p. 104) provide who may acquire such a lien as is therein provided for, upon what property the lien may be acquired, and what priority and effect shall be given to it. A lien arises under the act when the contractor agrees to construct such a building as the employer might thereafter wish constructed, or to make such alteration or repairs as might be required, or to furnish such materials as might be necessary. (*Choteau* v. *Thompson,* 2 Ohio St. 114.) Contracts similar to the one set up by respondents in this case have been construed to be one entire transaction. (*Choteau* v. *Thompson, supra; Milner* v. *Norris,* 13 Minn. 455; *Tompkins* v. *Horton,* 25 N. J. Eq. 284; *Skyrme* v. *Occidental Mill,* 8 Nev. 220.) Where materials are furnished from time to time, for a particular purpose, and the dates are so near each other as to constitute one running account, the lien dates from the time when the first article was supplied, or the first labor performed. (*Beckel* v. *Petticrew,* 6 Ohio St. 247; *Skyrme* v. *Occidental Mill,* 8 Nev. 220; *Capron* v. *Straut,* 11 Nev. 304; *Preston* v. *Sonora Lodge,* 39 Cal. 116; *Choteau* v. *Thompson,* 2 Ohio St. 114; *Tibbetts* v. *Moore,* 23 Cal. 208; *Barber* v. *Reynolds,* 44 Cal. 519; *Kendall* v. *McFarland,* 4 Oreg. 292.) The contract referred to in section 1 and section 15, Laws of 1874, may be written or oral, express or implied. (*Dalles Lumber and Manufacturing Co.* v. *Wasco Woolen Manufacturing Co.* 3 Oreg. 531.) It is objected that the description of the property by respondents, on which they claim to hold their lien, is not sufficient. It is substantially the same as that under which appellants claim a lien in their complaint, and they cannot with reason say it is sufficient for appellants, but not for respondents. But the description is sufficient in itself. (*Hotaling* v. *Cronise,* 2 Cal. 60; *Hartner* v. *Conrad,* 12 Serg. & R. 301 ; *Springer* v. *Keyser,* 6 Whart. 187 ; *Tibbetts* v. *Moore,* 23 Cal. 208.)

THAYER, J.—This appeal is from a decree rendered in a suit to foreclose a chattel mortgage executed by the respondents Smith and Owens to the appellants, December 15, 1883, upon certain leasehold premises situated in Linn County, to secure the payment of certain promissory notes owing by said Smith and Owens to appellants, amounting to the aggregate sum of $5,000. Said premises included a certain saw-mill that had theretofore been purchased by said former parties of the appellants. The respondents Cherry and Parkes were made defendants in said suit, upon the grounds that they had, or claimed, some interest in the said premises which the appellants sought to foreclose. Cherry and Parkes filed an answer, in which they set forth the nature of their interest in the said premises, which they alleged to be a mechanic's lien upon the said property for the sum of $1,300, arising out of a claim for work done and materials furnished by them to the said Smith and Owens to repair the said mill. It was alleged in the said answer that the said Cherry and Parkes, at the special instance and request of the said Smith and Owens, did, between the 5th day of November, 1883, and the 23d day of February, 1884, build and construct for them one ten-horse-power engine, and place the same in said saw-mill, and did repair and alter one planer, and place the same in said mill, and furnished other labor and material in constructing, repairing, and altering said saw-mill, and the machinery therein, as per bill of items attached to said answer and marked Exhibit A, for all of which they (said Smith and Owens) promised and agreed to pay them (said Cherry and Parkes) said $1,300, after deducting all credits and offsets, and executed to them a promissory note, as evidence thereof, bearing date February 26, 1884, due thirty days thereafter.

It is alleged in the answer, also, that Cherry and Parkes commenced to furnish said labor, machinery, and material to said Smith and Owens for the construction and repair of said saw-mill, and the machinery therein, on the 6th day of November, 1883, and continued to furnish the same until the 22d day of February, 1884, at which time said alterations were completed; that on the 22d day of March, 1884, they filed in the office of

the county clerk for said Linn County an account of said indebtedness, duly verified by them, with a description of the said mill premises, by which they claimed to have obtained a lien thereon, and upon the fixtures belonging thereto, from said 6th day of November, 1883; and that it had priority over the appellants' lien by virtue of the said chattel mortgage.

The appellants filed a reply to the answer, denying the allegations contained therein, and the issues so joined constitute the main question in the controversy between the parties. The Circuit Court decreed that there was due from Smith and Owens to Cherry and Parkes the amount claimed by them in their answer; that it was a lien upon the said mortgaged premises under and by virtue of the act of the legislative assembly of this State providing for the liens of mechanics, etc., and the manner of their enforcement, approved October 28, 1874, and that the said lien had priority over the said mortgage. The appellants' counsel claims that so much of said decree as affects the rights of the appellants is erroneous.

The question in the case which is referred to this court for determination depends wholly upon the facts and circumstances under which the work was done, and the material furnished by said Cherry and Parkes to said Smith and Owens, alleged in the answer, and the construction of the said mechanic's lien law. A number of authorities are cited in the respondents' brief, and many of them were referred to upon the argument, and the appellants' counsel also cited several. But the authorities, as a general thing, are of very little importance in this case. They may serve to show how mechanics' lien laws of other States have been construed; but that is of no great consequence, from the fact that the laws of this State upon that subject have, for the past ten years, been a confused jumble. It will be seen, from an inspection of said Act of 1874, that an attempt was made to compile the California Act of 1862, relating to mechanics' liens, and evidently it was consummated by some legislative journeyman, instead of by the members of that body. If the cobbler who got it up had been sufficiently discreet to have copied the substance of the California act literally, it would have

been reasonably acceptable.   But the vanity peculiar to novices induced him to change its terms, and to inject into it original ideas of his own.   That effort displaced the lion's skin, and exposed the pretender underneath.   Some of the sections of said Act of 1874 were copied word for word from the California act. They are plain, and easily understood; but others were mere distortions.   Section 15, under which the respondents claim to have acquired the lien herein, which evidently was taken from section 17 of the California act, is one of the unfortunate sections.   The original section was wantonly mutilated in attempting to remodel it.   The changes and interpolations to which it was subjected so botched it that it would require a *savant* to determine what it means.   The section, as adopted by the California legislature, provided that whenever any person should proceed to erect any building, etc., without making any contract in writing for such construction, etc., every person who should perform labor or furnish material therefor should have a lien upon the interest of the person causing the same to be constructed, etc., and on the land for a convenient space around the same, or so much as might be required for the convenient use and occupation thereof, which lien should relate to the time of the commencement of the work, and be enforced in the same manner as other liens therein provided for.   As adopted by the Oregon legislature it reads substantially the same until it comes down to the end of the sentence terminating with the words " without making a contract in writing"; but there the following is injected into it : —

" Or if the contract is oral, *who shall refuse,* when applied to by any subcontractor, artisan, etc., to furnish a memorandum in writing of the terms of such oral contract for such construction or repairs."

Then the words in the original are resumed.   This amendment, so far as I can understand it, has changed the whole sense of the section.   In the original, it was clearly intended that if a person proceeded to erect a building, without making any contract in writing for its construction, every person who should perform labor upon it, or furnish material to build it,

would be entitled to claim a lien thereon. But as amended, the right to the lien attaches only in case the person who proceeds to erect the building refuses to furnish a memorandum in writing of the terms of the contract for its construction. The words in the amended portion, "who shall refuse," undoubtedly refer to the person who proceeds to erect the structure, and I cannot perceive that there is more than one alternative; although the word "or" is used after the word "writing," and before the words "if the contract is oral." As no new condition is introduced, the two phrases, "without making any contract in writing," and "if the contract is oral," import the same thing; and it is no matter if they do not; the words "who shall refuse" apply as much to one as to the other.

If this view is correct, then said section 15 has no application to said respondent's claim. They cannot invoke the aid of that section, whatever may be the true construction of the original section, in order to establish their right to their lien upon the property in question The legislature of this State has by the amendment restricted it to that class of cases where there has been a contract for the construction of the building, or other structure upon which the lien is claimed, but which has not been reduced to writing, and the work been done and material furnished to the contractor. The lien then attaches to the building or structure. If a memorandum of the contract is refused, instead of being a liability against the owner for an unpaid portion of the contract price, as provided in other parts of said act, the result is that said respondents could claim no lien except under the first section of said act; and that, in order to establish it under that section, they are compelled to maintain that they made an original contract for the erection or repair in whole or in part of the said saw-mill. Supplying the proprietors from time to time with machinery, or mending their old machinery, would not ordinarily give them a lien upon the premises for the debt; more especially where it was ordered from their shop, and delivered to the proprietor by being put aboard the cars. If a mill owner were to order from a foundry a casting, or from a machinist a piece of machinery, the latter

could not claim a lien upon the premises, nor assuredly could such lien be claimed where some appliance was sent to the shop of the machinist for repair. We must, therefore, look into the evidence to ascertain whether the materials were furnished and the work done in pursuance of an entire contract between the said parties to construct or repair the mill in question in some specified particular, or whether, on the other hand, the materials were furnished as ordinary custom work is done, and the labor upon the mill performed in the same manner in which labor is commonly employed.

The exhibit annexed to the answer, and referred to as Exhibit A, contains a great number of items which appear to have been charged from time to time, evidently as the work and materials were ordered. The first charge is November 6, 1883. It is freight and drayage on planer, six dollars. The second charge is on the 20th of the same month. It is thirty-two feet three-fourths-inch pipe, four dollars and eighty cents, and several other articles, which appear to have been furnished on that day. The third is on the 27th of the same month, and includes several articles; and it continues along, several days usually intervening between the dates of the charges. At the end are credits amounting in the aggregate to fifty-eight dollars, but they are given under two dates, February 6, 1884, by 216 feet cedar lumber, six dollars and fifty cents; February 25, 1884, by three small pieces of machinery, and a difference on labor, and a deduction on a piece of machinery, making in all the balance.

The only evidence which appears to have been given as to the manner the work and materials were contracted for was the deposition of one of the respondents, Mr. Cherry. In answer to some of the interrogatories asked him, he said:—

"I was at Harrisburg and saw Mr. Smith; he told me he wanted some work done on his planer, and other work, and also wanted me to furnish some new machinery. I did so. There was no other contract."

To another interrogatory he stated, in effect, that all said work and material entered into the construction of said saw-mill, and was necessary to its use, and formed a part of it. This

evidence, standing by itself, might be sufficient to warrant the deduction which seems to have been drawn by the Circuit Court, that the work was done and the material supplied under a general contract to repair the saw-mill, in which case a lien would probably have attached, as claimed by the said respondent. But other portions of the testimony of the said witness seems to negative such conclusions, as will be seen from the following questions asked him, and his answers thereto:—

"Question 44. These articles that you have mentioned as furnished to them in the first list you gave this morning in direct examination, they ordered them at the time you have specified, and you just simply forwarded them to them, and charged the usual price, did you not? Answer. We did. Q. 45. The work that you did on the journals and old pulleys were sent by Smith and Owens to your firm in Albany, and you did the work and repairs on them as specified in your bill of items furnished, and when finished delivered them to Smith and Owens at the shop or foundry in Albany? A. We did. Q. 46. And at each time you would charge them for the work done or machinery furnished? A. Yes. Q. 47. Was each of these articles that Smith and Owens purchased of you purchased separately, as charged in the bill? A. They were purchased just as the orders were sent in. Q. 48. And this statement given by you this morning, and alleged in your answer, is simply a running account between Cherry and Parkes and Smith and Owens from November, 1883, to February 22, 1884? A. Simply a running account up to the time the note was given. Q. 51. Your account or bill of items states substantially all the facts, as well as the contracts between your firm and that of Smith and Owens, does it not? A. It does."

This testimony given by the respondent in his own behalf utterly precludes any inference that there was any contract or definite understanding in the outset in reference to furnishing the work and material, or that it was anything more than the performance of casual custom work. Smith doubtless did speak to Mr. Cherry about doing jobs of that character for Smith and Owens, and furnishing them new machinery; but it is very evi-

dent, from the testimony of Cherry, that it was only intended to be such work and machinery as they should from time to time order. Machinists, like other persons carrying on business, have their customers; but the lien law was not designed to give them a lien for work done and articles furnished in their usual course of business, any more than it was to give a lien in favor of grocers, tinners, or plumbers for articles supplied and work done in the ordinary course of trade or employment. There might, in such a case, be such a continuous account that it could be sued upon as an entire transaction; but it would lack the essential ligament which establishes such an entirety that the lien attaches from the beginning. The party who does the work or furnishes the material must be a contractor. He must undertake to do a job, either to build or repair a structure in some particular, and the work must have been done or the material furnished in pursuance thereof. It is the contract and the nature of the subject-matter thereof which give rise to such a lien. An entire transaction must have been contemplated by the parties in the outset. Such a lien is an extraordinary right; it relates back to the time of the commencement of the work or of furnishing the materials, has precedence over intervening claims specified in the act, and extends to the land upon which the structure is situated. It certainly was not intended to give such a preference in an ordinary business affair, or in any case, other than that of an undertaking upon the part of the mechanic or material man to build, add an improvement to, or repair, in some particular, the structure, or furnish material therefor. The case cited by the appellants' counsel of *Haslett* v. *Gillespie*, 95 Pa. St. 371, seems to sustain this view.

The decree of the Circuit Court will therefore be modified in the part thereof which gives a preference to said respondents' claim, except as to those articles not covered by the appellants' mortgage.